**[Cite as *State v. Guild*, 2021-Ohio-3520.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29133 |
| | : | |
| v. | : | Trial Court Case No. 20CRB1404 |
| | : | |
| JOSHUA N. GUILD | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of October, 2021.

. . . . . . . . . . .

NOLAN C. THOMAS, Atty. Reg. No. 0078255, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Plaintiff-Appellee

NICHOLAS D. GRAMAN, Atty. Reg. No. 0082359, 12 East Warren Street, Lebanon, Ohio 45036
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Joshua N. Guild appeals from the trial court's judgment convicting him of voyeurism, a misdemeanor of the first degree. On appeal, Guild asserts that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

**I. Facts and Procedural History**

{¶ 2} On December 5, 2020, Deysi Sizeland was at the Valley Thrift Store in Kettering with her family, most notably A.S., her five-year-old daughter. When Sizeland was standing in the aisle approximately four to six feet away from A.S., she spotted Guild kneeling down holding his smartphone in his left hand. Sizeland testified that Guild was "no more than a foot away from [A.S.]," placing his phone "right directly underneath [her] dress." Tr. 13. Sizeland then confronted Guild, demanding that she see his phone. When Guild refused, Sizeland became physical and "maneuvered his phone or his hand" to see the phone screen. Tr. 9. She testified that his phone was on the camera mode, recording. Tr. 9. As Guild attempted to leave the encounter, Sizeland began requesting for someone to call the police. Tr. 12. The police were called, and Officer Stull arrived on scene. Officer Stull placed Guild in handcuffs while investigating. Tr. 31. After completing the investigation, Officer Stull arrested Guild for voyeurism, in violation of R.C. 2907.08(D).

{¶ 3} The matter proceeded to a bench trial. The State's evidence at trial consisted of a thumb drive containing a number of videos, including the cruiser cam from the officers involved in this case and store surveillance footage from the area where the incident occurred. Tr. 1. The State also presented still photographs of the scene, as well as of A.S. in her long dress. Both Sizeland and Officer Stull testified to their observations on the day

in question. Guild did not testify or offer any evidence on his own behalf.

{¶ 4} The store surveillance video was played approximately 16 times during trial. Tr. 14, 15, 16, 19, 21, 23, 26, 38, 39, 41, 42, 44, 45. The store surveillance video showed A.S. standing by Sizeland and depicted Guild closely approaching A.S. while getting in a crouched position with his phone in his left hand. The video did not show whether the phone was directly under A.S., perhaps due to Sizeland's blocking the view. However, the video did show Sizeland facing the encounter from approximately four to six feet away. Sizeland testified that she saw Guild "in a crouched position with a phone underneath [A.S.'s] dress." Tr. 8. She indicated that "the face of the phone, the screen, was facing down. There is a camera pointing up towards her dress." Tr. 8. She noted that she saw the face of the screen, and "it was on the recording mode." Tr. 9.

{¶ 5} Officer Stull testified about his conversation with Guild after the incident. The officer stated that Guild told him that he (Guild) was at the Valley Thrift Store "to buy and sell stuff * * * at a higher price." Tr. 33. Officer Stull told the court that he asked Guild to see his most recent video on his phone, and Guild immediately became very nervous, not wanting to show him anything on his phone. Guild began rambling in a nervous manner, stating "how the phone was his life, and he * * * didn't want to accidently find out that his video was recording on accident and get him in trouble for something he did not mean to do." Tr. 35. No photographs or videos from Guild's phone were offered into evidence at trial.

{¶ 6} Guild challenged the State's case through cross-examination. During cross-examination, defense counsel repeatedly played the surveillance video, asking Sizeland to point to the exact moment that she saw the phone directly underneath A.S.'s dress. Tr.

Sizeland was unable to point to this part of the video, stating: "You can't directly see because I'm blocking it." Tr. 27. She indicated, "[t]he video shows one angle, and what I saw, in person, is another thing." Tr. 27. Guild further challenged Sizeland by emphasizing the fact that Guild was not looking at his phone during the alleged incident. Sizeland testified, however, that it appeared he was "pretending to look at something on the bottom shelf." Tr. 18.

{¶ 7} The trial court found Guild guilty and sentenced him to 180 days in jail, with 150 of those days suspended, a $1000 fine with $900 suspended, and five years of probation. It also ordered Guild to register as a Tier I sex offender.

{¶ 8} Guild appeals from his conviction.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 9} In his sole assignment of error, Guild claims that his conviction was based on insufficient evidence and was against the manifest weight of evidence. He emphasizes that "there was no evidence his phone was on record or picture mode and no evidence was recovered from the phone." Appellant's brief at 8.

{¶ 10} When a defendant challenges the sufficiency of the evidence, "he [or she] is arguing that the State presented inadequate evidence on at least one element of the offense to sustain the verdict as a matter of law." *State v. Goldblum*, 2d Dist. Montgomery No. 25851 2014-Ohio-5068, ¶ 14. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 11} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Cassell*, 2d Dist. Clark No. 69-CA-64, 2011-Ohio-23, ¶ 46. When a conviction is challenged on appeal as being against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Goldblum* at ¶ 23; *see also State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1991), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} Because the trier of fact sees and hears the witnesses at trial, we must defer to the fact-finder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 13} The trial court found Guild guilty of voyeurism. That statute states in relevant part: "No person shall secretly or surreptitiously videotape, film, photograph, or otherwise

record another person under or through the clothing being worn by that other person for the purpose of viewing the body of, or the undergarments worn by, that other person." R.C. 2907.08(D). "Surreptitiously" is commonly defined as "unauthorized and clandestine," that is, done by "stealth and without legitimate authority." *State v. Latimore*, 12th Dist. Butler No. CA2015-09-175, 2016-Ohio-2989, ¶ 11. Therefore, by its terms, "[t]he elements of R.C. 2907.08(D) include an activity conducted 'secretly or surreptitiously' thereby implying without consent 'under or through the clothing' of another, 'for the purpose of viewing the body of, or undergarments worn by, that other person.' " *State v. Zimmerer*, 12th Dist. Butler No. CA2019-10-176, 2020-Ohio-3921, ¶ 40, quoting *State v. Hopper*, 5th Dist. Licking Nos. 15-CA-92, 15-CA-93, 15-CA-94, 15-CA-95, 15-CA-96, 2016-Ohio-5760, ¶ 21.

{¶ 14} Construing the evidence in the light most favorable to the State, there was sufficient evidence to support Guild's conviction. The video surveillance evidence and Sizeland's testimony were enough to establish each element of voyeurism. A rational trier of fact could have concluded that Guild secretly or surreptitiously videotaped or filmed underneath A.S.'s dress beyond a reasonable doubt.

{¶ 15} Guild argues that, because the surveillance video does not show that Guild placed the phone directly underneath A.S.'s dress and because Sizeland's testimony only indicated that she saw the phone in recording mode *after* Guild allegedly placed the phone underneath A.S.'s dress, the evidence was insufficient to establish all the elements of R.C. 2907.08(D) beyond a reasonable doubt. We disagree.

{¶ 16} The fact that the State did not present any photographic or physical evidence from Guild's phone was not dispositive. *See Zimmerer* at ¶ 45-46 (finding there

to be circumstantial evidence that defendant photographed or video-recorded the victim, and the lack of pictures or videos on defendant's phone only showed that the State did not have direct evidence). "When offering proof, both circumstantial and direct evidence have the same probative value[.]" *State v. Crowe*, 12th Dist. Warren No. CA2015-07-065, 2016-Ohio-1579, ¶ 19*, citing State v. Crutchfield*, 12th Dist. Warren No. CA2005-11-121, 2006-Ohio-6549, ¶ 20.

**{¶ 17}** The language of the statute does not require that the defendant archive or save the picture or recording, only that the defendant engage in the act of "videotap[ing], film[ing], photograph[ing], or otherwise record[ing] another person." R.C. 2907.08(D). Here, it can be established from circumstantial evidence, beyond a reasonable doubt, that Guild did place the phone underneath A.S.'s dress and engaged in the act of either photographing or recording. Sizeland's testimony that she saw Guild's phone in recording mode moments after the alleged incident, along with the surveillance video of Guild crouching down with his phone in his left hand near A.S., was enough circumstantial evidence for the trier of fact to determine, beyond a reasonable doubt, that Guild engaged in the act of recording or photographing A.S. underneath her dress. *See State v. Strong*, 10th Dist. Franklin No. 09AP-874, 2011-Ohio-1024, ¶ 42 (testimony of one witness, if believed, is enough to support a conviction). Therefore, the conviction was not based on insufficient evidence.

**{¶ 18}** Moreover, Guild's conviction was not against the manifest weight of the evidence. The inference that Guild was engaged in the act of recording A.S. was a reasonable one given the evidence presented at trial; the store surveillance video, the testimony by both Sizeland and Officer Stull, and the still photos allowed for this inference.

{¶ 19} Guild contends that the conviction was against the manifest weight of the evidence because, in looking at the evidence in its totality, Guild was in a lawful place examining merchandise on the Valley Thrift Store's bottom shelf while holding his phone. To support this proposition, Guild points to the testimony by Sizeland which suggests he was looking at the bottom shelf in the aisle and not his phone, along with the fact that Sizeland, on cross-examination, could not indicate in the video the exact moment in time that Guild placed the phone underneath A.S.'s dress.

{¶ 20} Looking at the evidence in its totality, however, it cannot be said that the trier of fact clearly lost its way in finding Guild guilty of voyeurism. First, Guild did not need to be looking at his phone in order to engage in the act of recording or photographing; while this fact may make it more probable that he was looking at merchandise, Sizeland testified that it seemed he was "pretending" to look at something on the bottom shelf while recording A.S. This was evidence that Guild attempted to act in a secret or surreptitious manner when recording. Thus, the inference that Guild was pretending to look at the bottom shelf while also recording underneath A.S.'s dress was a reasonable one.

{¶ 21} Further, Sizeland could not indicate in the surveillance video the exact moment in time that Guild placed the phone underneath A.S.'s dress because Guild's actions while crouching down beside A.S. were partially blocked by Sizeland, making it impossible to see where Guild would have placed the phone underneath A.S.'s dress. Because Sizeland was standing four to six feet away from the encounter, the trial court could have reasonably found that Sizeland's description of the incident was accurate.

{¶ 22} We must defer to the trier of fact as to the credibility of and weight to be given to Sizeland's testimony. *See State v. Sewell,* 2018-Ohio-2027, 112 N.E.3d 1277,

¶ 3 (2d Dist.) ("We defer to the trier of fact on credibility issues * * *."). Based on the evidence presented, it cannot be said that the trier of fact clearly lost its way in determining that the evidence supported a guilty verdict.

{¶ 23} Guild's conviction was neither based on insufficient evidence nor against the manifest weight of the evidence. Accordingly, his assignment of error is overruled.

**III. Conclusion**

{¶ 24} For the foregoing reasons, the trial court's decision will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and HALL, J., concur.

Copies sent to:

Nolan C. Thomas
Nicholas D. Graman
Hon. James F. Long